Good morning, Your Honors. Daniel Kaplan, representing the appellant Adan Pineda-Doval. I'm going to attempt to reserve five minutes of my time for rebuttal. There are a number of issues that were raised in this appeal, and there are three that I would like to focus on, although, of course, I'm open to discussing any issues the Court would like to discuss. The three are, number one, the instruction that directed the jurors that they must find certain crucial facts. The second one is the issue of proximate cause and how various rulings by the district court effectively took it out of the case. And the final one is the sentencing in the course of which the judge decided to treat Mr. Pineda-Doval as a second-degree murderer, implicitly incorporating the notion of malice of forethought. On the first issue, the jurors were given a number of instructions at the culmination of this trial that were — that began with the direction, you must, they were told. You must follow the law. You must. It seems to me the context was, now I'll tell you what has to happen if this person's going to get convicted. He'll get convicted. To convict him, you must find, and so on. It seems to me one way that that could easily be understood is just to say, well, this is a requirement if he's going to be convicted, but we don't have to find it. I mean, that — I think that was the intention, Your Honor. That was the intention. But for lay jurors reading the instruction, when they were told certain things that they must do and then were told that they must find these facts in favor of the government, lay jurors might easily have understood that to mean they literally must take that instruction at its word and find those facts in favor of the government. You'd have to wonder why they're there if they're being told. Well, fair enough, Your Honor. But again, these are lay people. And in the course of the trial, a lot of very crucial facts were stipulated, and they were told, the parties agreed that these facts are true, that all these people died because of this rollover, that this rollover happened at a certain time and place, et cetera, et cetera. Well, that's unfortunate phraseology. And, of course, a key point in respect to the you must instruction is that those two facts happened to be the only facts that were in dispute in this case. So to the extent the jury could have looked at that instruction, taken it at face value, and said, well, we must find that this defendant was the one driving that Suburban, and this defendant effectively caused the deaths of all these people, that would explain why, after six days of evidence in a case the judge thought was quite complex and everyone else, I believe, thought was quite complex, they took about 108 minutes, I think, to return convictions on all counts. I think that that point is clearly enough stated in the briefs, unless the Court has further questions. I'm going to turn to the question about proximate cause. There were two crucial rulings in the course of the trial and before the trial that effectively took the whole notion of proximate cause out of the case. The first one was the jury instruction that was worded to tell the jurors that as long as the deaths that were involved in this case occurred in the course of the transportation of illegal aliens and were related to the transportation of illegal aliens, that satisfied the notion of causation. Effectively, that was telling the jurors that as long as the defendant, Mr. Panetta-Devall, was the but-for or what's sometimes known as the factual cause of those deaths, they must find him guilty. That takes out the issue of proximate cause. The second way that that was done in this case was that before the trial, the government filed a motion to eliminate, and they said there is a Border Patrol policy, there are written policies that govern the use of these spike strips that were used in an attempt to deflate the tires in the suburban in this case. We think the Court should bar the defense from arguing, showing, or producing evidence to the effect that the Border Patrol agents who used the spike strip that was part of what led to this accident and these deaths violated the Border Patrol policy, and the Court agreed with that. The Court ruled over defendant's strenuous objection, that that was totally irrelevant. Whether the Border Patrol followed the policy or not was totally irrelevant. And again, only by ignoring the importance of proximate cause as part of what the government had to prove could the Court have reached that conclusion. I kind of, I understand your point about the instructions, but I suppose on the ruling in Lemony, it seems to me the Court could say, well, the policies may go way, way above  In other words, they're not violating the policy. You know, it may be totally unconnected with what kind of a violation of duty there would be in the, according to the common law or whatever. That would be a perfectly valid argument. However, it doesn't take the relevance out of the case. The policy would set out some evidence of what the standard of care is, as it does in regular tort cases, which were cited in the brief, in the opening brief. And the government would be free to argue and put on evidence to the effect that, well, the policies, as you put it, are way above the standard of care that should apply here, and the Border Patrol agents' actions didn't fall that far below that standard, et cetera, et cetera. But this would be an issue that should have been in front of the jury. That evidence should have been able to be brought out in the case. What the Court did was take the entire dispute off the table. This should have been something for the jurors to have thought about and received evidence on. Only, again, only by assuming that somehow only but for cause had any role in this case could the Court decide that failing to comply with the policy governing the use of these things was somehow totally irrelevant. By the, the jury might have heard the evidence in this case, even with the limited evidence that did come in. The jury might have thought that the Border Patrol agents acted so negligently in using that spike strip in such a way that Mr. Panetta-Naval could see it and react to it and swerve around it, knowing that that was likely to happen, having seen that happen on many previous occasions, on an incline that was noticeable, going as fast as he was, although it wasn't much faster than the speed limit, as fast as he was, knowing that there were unsecured people, 20 unsecured people sitting in the back of that vehicle with, with no seats or seatbelts, knowing all that. The jury might have thought, you know, the Border Patrol agents acted grossly negligently in this case. Kennedy. You'd have the same argument, would you, if there had simply been a high-speed chase, that some patrol car started following this and he sped up and they sped up with him and he didn't make a curve and the same ten people were killed? It would depend on the circumstances. If the, if the patrol agent engaged in a high-speed chase in incredibly dangerous circumstances where then maybe the road conditions were extremely treacherous and the, and the, and the patrol agent should have realized there was a strong likelihood of death resulting, that might be an argument available in another case, depending on the circumstances. I guess the question maybe is foreseeability of some of these things. And foreseeability enters into it. If the jury had really believed, even on the evidence presented, that it should have been foreseeable, I'm sorry, if the jury had really believed that the Border Patrol agent's conduct was so negligent, so grossly negligent that it was unforeseeable to Mr. Panetta-Duval, they should have been able to conclude that it broke the chain of causation as to Mr. Panetta-Duval under principles of proximate cause. But even if they believed that in this case, given, given this instruction, they were not enabled, they were not permitted to decide in favor of Mr. Panetta-Duval because they were effectively told as long as Mr. Panetta-Duval was a but-for cause, he's liable, he's, he's criminally liable for this, for these deaths that result. On the same rationale and the same analysis, if Mr. Panetta-Duval had been driving these people the way he did and a freak storm happened and lightning struck the SUV and some people died on the, on the same principles of merely but-for cause, Mr. Panetta-Duval would be just as liable as he was under these circumstances. That is inappropriate under this Court's case law, particularly the Spinney case, which was discussed at length in the briefs, where the Court, applying very similar statutory language, talking about a statute that refers to when deaths result from certain conduct, said that this does incorporate principles of proximate cause. What is, what is your view of the relevance of the Matus-Leva opinion? Your Honor, the Matus-Leva opinion addressed an argument that the statute was void for vagueness because it lacked a mens rea requirement. In rejecting that argument, the Court said the, the statute is not so void as, not so vague as to fail to give anyone reasonable notice of what it outlaws, because there is a mens rea required. There must be an intent to transport illegal aliens. And then along the way, they said it also puts someone on notice that deaths have to happen in the course of the transportation, related to the transportation. And there's a causation requirement that puts somebody on notice that if you expose somebody to dangerous conditions, you may be liable under this part of the statute. The Court did not set out to, was not asked to, and did not define what the, what exactly the causation standard was for this statute in all of its elements and all of its key concepts. Because Matus-Leva simply was not a case about what the causation standard is for this statute, it's not the appropriate source of that instruction. Mr. Pineda-DeVell's counsel argued in the course of going over the jury instructions that it was not a proper source of the instruction. The government urged that it was, and the Court agreed a correct source of the proper language in terms of causation for the instruction would be a case like Spinney, which actually was about it. Sotomayor, you're asking for something that is different from what Matus-Leva says, the sentence, the term resulting incorporates a causation requirement and thus puts persons of ordinary intelligence on notice that increased penalties may apply if they allow those they are smuggling to be exposed to life-threatening conditions during the smuggling process. And if we are bound by that statement, then I don't know if that's an if, but if we're bound by that statement, then certainly in this case the defendant exposed the victims to life-threatening conditions during the smuggling process. I think you're bound by the statement to the extent that you shouldn't reach a conclusion which conflicts with it, but I'm not suggesting that the instruction that should have been given would conflict with that statement. The instruction that an instruction that would have included the proper context of proximate causation would not have been inconsistent with anything that was said in the Matus-Leva decision. Those observations the Court made in the course of saying the statute was not impermissibly vague would not be inconsistent with an instruction that went further and said proximate cause must be shown, there must not be an intervening superseding cause, which is so important as to break the chain of liability of causation as to the defendant. None of those things would be in conflict with anything that's in Matus-Leva. I want to turn in a few minutes remaining to the issue of the sentencing. In the course of sentencing, the judge decided to apply a cross-reference to the second-degree murder guideline. Effectively, this requires a finding that Mr. Pineda-Deval was not merely negligent as to the people in the suburban, that he was not merely acting with wanton or reckless disregard for the life of the people in the suburban, because that is the standard for involuntary manslaughter, but that he actually murdered the people in the suburban. There is simply no evidence which can support a conclusion, let alone a conclusion by clear and convincing evidence, to this finding which effectively added 23 offense levels under the guidelines and raised the guidelines offense sentence from a top sentence of six and a half years to life imprisonment. The evidence was that Mr. Pineda-Deval kept driving instead of stopping under certain conditions, conditions of the passengers, conditions of the road, conditions of the vehicle. These were all conditions that Mr. — that Agent Lindsay knew about. He passed within two feet of the suburban at the very beginning of his encounter, saw into it, and saw how many people were in and that they were unsecured and that they had no seats and that they had no seatbelts. He followed behind Mr. Pineda-Deval at the same speed. He knew how fast Mr. Pineda-Deval was going. He knew the conditions of the road because he was right behind him. He didn't even think those conditions were significant enough to even tell the other agents with whom he was in radio contact, the ones who were setting up to deploy the spike strip, what those facts were. He thought they were perfectly routine. He said it was not at all significant, all of those things. It was quite ordinary, quite standard. He had no idea something like this was going to happen. And Mr. Pineda-Deval, by the same token, had no idea something like this was going to happen either. Malice aforethought in the terms of second-degree murder requires an extreme indifference to human life. It would be something akin to my taking a gun and randomly shooting into the back of this room, which I know has some people in it. There's nothing like that in this record. Well, it seems to me that I take your point that the district court used the term reckless rather than malice aforethought, but the underlying findings that the court made, why wouldn't they support a finding of malice aforethought in the following sense? The court emphasized, I've just been looking at it again, but the court emphasized the repeated pleas of the people in the car to please stop, to please slow down. They were terrified, and they communicated that pretty clearly. And the court was extremely cognizant of that and talked about it at some length. And in the face of that, in addition to the sirens and the flashing lights and all the usual stuff that the police were doing, the people who were at risk and who ultimately died were begging for him to stop. And why wouldn't those facts that the district court found have supported a finding of malice aforethought, assuming that that phraseology had been used instead of the word recklessness? Because the fact that people are experiencing fear and expressing fear doesn't show that they're likely to actually be killed. And the people in this situation who had been through this situation before, the two specific times before, they didn't believe that death was likely to result because they'd all been through situations over and over again just like this where no death had resulted. The fact that subjectively some people who didn't have the prior experience felt perhaps that they were at risk and expressed that doesn't mean that they were at risk. It sounds a lot like the argument that I've gotten away with it before, so it can't be that bad. Well, that's a valid moral judgment, but it's not a judgment which fits into the question of whether he was acting with extreme indifference. The fact that he was in a situation twice before and nobody was hurt, including one time when he drove around the spike successfully, doesn't make him a better person, Your Honor, but it makes him less guilty of malice aforethought, because it simply cannot be denied that that shows he did not, not only did he not have reason to think that he was acting with extreme indifference, that people were very likely to die, but that he had affirmative reason to think that was not going to happen. I'm going to reserve the balance of my time. You may do that. Good morning. May it please the Court. My name is Joe Kohler. I represented the United States at the trial in this case. This Court should affirm the convictions and sentences in this case. I want to start out by talking about the standard of review here because it is important in this case. Nowhere during the course of requesting jury instructions, i.e., proposed instructions prior to trial, or at any point during the charging conference or at any place elsewhere during the trial, did the defendant, through his attorney, request an instruction on proximate cause, nor did the defendant, through his attorney, request the word legal cause. Instead, the defense attorney proposed an instruction, originally just the elements of the transportation of illegal aliens, with the last element being the defendant caused the death of the person named in the particular count. During the course of the charging conference, the defense attorney recognized that he had not provided enough legal support in his proposed jury instructions for his position, and he cited a few cases to the Court during the jury instruction conference. And this is at the October 24th transcript from 824 to 825 in page 826, which is at 780 to 81 and 782 of the excerpts of record. He wanted the instruction to say the defendant caused the death of any person. Judge McNamee, the judge presiding over the trial in the case, discussed the issue with the parties. They were discussing the lesser-included verdict form as well, and noted that the parties really hadn't fully defined their position on the point, because neither side was fully familiar with each other's cases and hadn't fully fleshed it out. And so Judge McNamee suggested that both sides go back during the lunch hour, confer with other people in their offices, read those cases, and come back and tell the Court what their position was going to be. After lunch, the parties discussed a few different issues and came back. And defense counsel, Mr. Juarez, and this is again on the October 24th transcript, this is at pages 818 to 819 of the excerpt of record, said, Your Honor, have we moved past defining resulting? That was going to be the next thing, right? The Court noted that we hadn't moved past that point and said yes. Mr. Juarez said, I don't agree with that as what I would suggest, and I'm trying to work with the government here. But I would go along with, as used in these instructions and forms of verdict, resulted in death means that the death of a person occurred in the course of the transportation of an illegal alien and was resulted to the – was related to the transportation of an illegal alien. That is exactly the sentence that the district court used in the instructions that were given to the jury. And so to the extent that Mr. Juarez might have requested something different earlier, the only thing different he requested earlier was a single sentence, the defendant caused the deaths. This is an instruction that explains what that causation means, a new request, and Mr. Juarez joined in making that request. In your view, does that instruction as given amount to a but-for? Absolutely not, Your Honor. That instruction incorporates a causation requirement by requiring the deaths to be related to the transportation. A but-for test would require simply that because he was transporting them, they were in a certain place at a certain time and something happened. So let's say they were parked at an intersection and somebody came along and fired a shot into the vehicle and killed somebody. A but-for test would allow for liability in that circumstance because but for the fact that they were being transported, that would have never happened. Did the instruction include the word results or resulting? The instruction required the next thing, which is the – and this is what defense counsel recommended. The defendant created one or more life-threatening conditions and the death was caused by these conditions. So the defendant wanted the word created rather than exposed, which is the word from intus leva. The district court required or included in the instruction the defendant exposed the individuals in the vehicle to one or more life-threatening conditions and the condition to which he exposed them was a cause in the deaths. So again, the defendant never requested what it is that he's asserting here on appeal, which is proximate cause, foreseeability, and that type of language. And because he requested the same language that he's now challenging, this should be reviewed for invited error, and if not for invited error, most certainly be reviewed for plain error. I'd like to talk about just briefly the you-must-find instruction. Very clearly, that language taken in the context of the entire set of instructions required the jury to find the following things before they could find the element resulting in death had been proven. It was not a directed verdict in any sense of the word. And that was made tellingly clear by the fact that the district court gave a lesser included instruction on the offense of transportation of illegal aliens not resulting in death. Taken in its proper context, there's simply no way to read that wording in that sense. In the case the defense cited in its brief, U.S. v. Cunningham makes exactly that point. U.S. v. Cunningham involved the exact same language. It's unfortunate. It probably should have said in order to find this element proven, you must find the following, but that meaning is very clearly implicit in it, and the Cunningham court reached the exact same result. Going on to the causation element and instruction. Number one, this Court routinely looks at the plain language of the statute as well as its prior decisions interpreting the meaning and scope of a statute in deciding what an appropriate jury instruction would be. And something to keep in mind there, the Spinney case, like Matus-Leva, was not an instruction case. The Spinney court was dealing with sufficiency of the evidence. And so again, you look at the prior decisions of the court as a whole in determining what the meaning of the statute is and derive instructions therefrom. And that is exactly what the judge did in this case with regard to the resulted in death language. To the extent that Spinney has an influence on this case in terms of approximate cause requirement, the case that I provided that's on your — on the bench there with you, United States v. Mexian, kind of ties this together and explains the contours of Spinney in terms of how it relates to probable cause. In Mexian, speaking of causation in the restitution context, the court there noted that in Spinney and in another case, Keith, the intervening causes that were at issue in the case were directly related to the original offense conduct. And that's why the court in Spinney found that restitution was proper because, again, it related back. Something that relates to the transportation is, in effect, not just a but for, but a legal cause. And it's entirely a foreseeable thing if the event relates to the transportation. An easy way to look at this is what if instead of the agent pulling the spike mat across the road, and just to be clear, in the appellant's brief he talks about the agent throwing the spikes, and during the arguments the defense attorney talked about the agent throwing the spikes. If you look at Agent Russell's testimony in the case, and that's at ER 657 to 660, Agent Russell talked about the spikes being on the opposite side of the road from him and having a cord across the road, a very thin string more or less, and pulling the spikes across the road so that they weren't thrown into the air and wouldn't have the defendant seeing some object flying through the air toward him to cause him to swerve. Rather, these were a spike mat that slid across the road more or less like a snake and would have been there for the defendant to run over had he not elected to swerve around those spikes. At bottom, the defendant's argument in this case is that the agents should have just let him go on toward Highway 95, which is in Agent Lindsay's testimony, a road that is very heavily traveled. This was at 730 on a Monday morning when lines of cars would be lined up outside the facility to go in, and Agent Lindsay explained that very frequently drivers who would be impatient about waiting for that line of cars would cross over into the opposing lane of traffic, i.e., Highway 95 being a two-lane road. These cars would cross over into the opposing lane of traffic and pass dozens of vehicles at one time, and the agents were very concerned that this vehicle would get out onto Highway 95, back toward the border, and get into a headline collision with one of these vehicles coming the opposite way on Highway 95. The argument the defense is making is that somehow the agents should be held responsible for these deaths, and that argument just flies in the face of the facts. How is this foreseeable to the defendant? Number one, the defendant knew that he had overloaded this vehicle, he knew that he had not provided seatbelts for anybody in it, and he chose to flee from the officers. In terms of the sentencing in this case. Would you particularly turn to the question of whether the trial court made the requisite findings? The trial court at Excerpt 1060 uses the term recklessness. And there are two embedded issues, I guess, at least. One is whether the evidence would have sufficed to find malice of forethought, and the second is whether it actually was found. First of all, the court definitely found malice of forethought. And defense counsel even recognized that at the time, and I'll get to that in a moment. But at page 1062 of the excerpts, Judge McNamee stated, this is not a case of negligent vehicular homicide, this is willful, deliberate, thoughtful, and intentional act of a self-serving nature. Now. Is that equal to malice of forethought? It certainly is, Your Honor. And the Lucena court defined malice of forethought as a wanton and depraved spirit, a mind bent on evil mischief without regard to its consequences. And here Judge McNamee found the equivalent of that, and that is that this was willful, deliberate, thoughtful, and intentional, and of a self-serving nature. Didn't the objecting papers set up the argument about malice of forethought? Absolutely. Both parties briefed the issue extensively. Okay. And. I mean, I guess maybe I should be asking the other side. But it seems to me if that's the argument that counsel are arguing about, and then the judge says, well, I think that the second-degree murder comparison is the appropriate one, that is an implicit finding. And defense counsel recognized that. Defense counsel stated that he had a disagreement with the district court's finding and that, and the finding was that his level of recklessness was raised to the level that it amounted to second degree, but the court has found that. And then he went on to say that he thought that the number of deaths factored into the court's determination, and this is where the quote starts, quote, determination that my client was, and then there's a few intervening words, acting with malice, end of the quote. What page is that on? I need to refer to that. That's all right. I'll find it. Okay. I'll find it. But clearly, the defense attorney understood that that was the finding the court was making. There are two other things that the court offered in terms of what its finding was. One was that the defendant's recklessness in this case had been amply pointed out by the facts of the case. And second, this is one of the most senseless acts I've ever seen in this courthouse, and this is at page 1060. Knowing that Judge McNamee had been on the bench for approximately 17 years at the time of the trial in this case, that's a long time for a judge to say something like that. Well, senselessness wouldn't necessarily mean malice. I mean, it could mean. In fact, it almost implies the opposite. I would stick with my argument on that point, that in the context of talking about the defendant's refusal to stop despite the pleas of his passengers, refusal to stop after the lights and sirens had been activated, knowing all these things, and then it's the defendant's deliberate decision to swerve. This is not an involuntary reaction to seeing the spikes come across the road. This is not somebody who is unaware that this is going to happen because he has been through it twice before. And I want to diverge for a moment here on the issue of having had this happen twice before. In the previous instance when the defendant actually swerved around the spikes, he was driving a truck with two passengers in the truck. It was not a heavily laden Chevrolet Suburban. And so prior to coming upon the spikes in this instance, driving that Suburban, the defendant had been going around curves on the road and having difficulty keeping that Suburban on the road going around those curves because of the speed. So he had every reason to know that there was a significant difference in the way this vehicle handled versus that truck. And then immediately prior to coming upon the spikes, he tells everybody in the truck, commend yourselves to God. Now, I suppose one could assign a lot of meanings to that, but the meaning that seemed apparent in the trial was that that essentially meant get ready to die. Going on, when the defendant was questioned after his arrest, if you were aware the Border Patrol vehicle was behind you, why didn't you pull over and stop? And this is it, the October 23rd transcript, pages 771 to 72. I apologize, I didn't write down the excerpt numbers. Answer, for the same reason that I knew, I had a prior criminal record and I didn't want to end up in jail. Approximately how fast were you traveling when Border Patrol was behind you? I was traveling between 60 and 65 miles per hour when I was trying to jump the spikes. At one point I was traveling about 80 miles per hour. Now, this is on 772 to 73, same day. Adon, in your own words, how was it that the vehicle rolled over? I went to the opposite side of the road to avoid the chains, referring to the spikes. One of the tires blew out and the vehicle rolled. So the defendant reveals, both in his comments to his passengers, as well as in his post-arrest interview, that what he was doing was deliberate. He had every reason to know that these spikes were coming. He ignored the pleas of his passengers. He knew he was driving an overloaded vehicle and there were no restraints for his passengers in that vehicle. To the extent that the defense certainly disputed the identification of Mr. Pineda Duvall as the driver, there's no dispute about the vehicle fleeing, about the vehicle having trouble maintaining its position on the road going through the curves. None of that is in dispute. There's no dispute about the fact that Agent Lindsay activated his lights and siren and the defendant made all of these decisions. The vehicle proceeded the way it did down the road. In light of all of that, any error in terms of whether it's the causation instruction or the failure for the district court to state that it was applying the clear and convincing standard when nobody talked about that standard prior to the hearing and defense counsel did not object to any of the court's statements during that hearing as not being clear and convincing, any error in that sense was harmless. Therefore, this Court should affirm the defendant's convictions as well as his sentences in this case. Thank you. Thank you, counsel. Mr. Kaplan, you may have the last word. In terms of the you-must-find instruction allegedly not being a directed verdict because there were other findings, we relied extensively on a case called Powell v. Galazza. There were other findings involved in that case, too, but the judge expressly told the jurors that they should find for the government in respect to one crucial finding, and that was enough to create automatic reversible error, not subject to harmless error review. The same principle should apply here. With respect to the defendant not requesting an instruction of proximate cause, he requested an instruction that would have required defendant cause the deaths. This would have left the issue of proximate cause in the case as opposed to the instructions the government proposed, which were accepted. They did not come from the defense. They came from the government. We showed that in the reply brief. That took the issue of proximate cause out of the case. That's the crucial distinction. What is your response to the argument that eventually there was an agreement that this instruction would go forward? Well, that happened after the defense counsel realized, after much argument and pressing for his own instruction to be accepted, that it wasn't going to happen, and he settled for the next best of trying to fix the wording in certain respects of the government's language. At that point, he knew that any further objections were futile. Even after he did that, the government kept saying, well, defense counsel objects to using matzah slave or defense counsel doesn't agree with matzah slave, but we think that that is the right case to use. It was clear that he was not going happily into this course of action. He had given up getting the language that he wanted. The government makes the argument, which is really a jury argument, that it's not plausible or sound to say that Mr. Pineda-Deval should have been allowed to just keep going and potentially go into I-95, which is dangerous. That's a perfectly decent argument. It should have been made to the jury. It should have been something that was in front of the jury. In United States v. Maine, which is cited in my reply brief, the Court said, look, there should have been proximate cause in this case, even though it was certainly a very plausible point that when somebody causes a serious car accident, negligent medical treatment is a likely outcome. It's not so unforeseeable that it would break the chain of proximate cause. And the Court says a one-word sentence, agreed, doesn't matter. The Court went on to say this is a question for the jury. It's not for this Court to decide that the Border Patrol agents did the right thing or didn't do the right thing, or they shouldn't have let him go on into I-95. Perhaps they shouldn't have. Whether this flies in the face of the facts or not is something that should have been argued, not taken out of the case the way it was. Now, the point has been made that the parties set up the argument before sentencing about malice aforethought and whether the second-degree murder cross-reference should be applied. They did, in fact, set up the argument. But there's a couple of problems with what happened in the sentencing. Number one, the Court never actually made a malice-aforethought finding. The phrase malice-aforethought never passed through the Court's lips. Well, does it have to be that phrase, no matter what else? I mean, what if he said, I think, I find that he killed these people absolutely on purpose and he really meant to do it and he didn't care. Malice isn't there. Aforethought isn't there. But the concept is surely there. So, you know, it's not, I guess, speaking only for myself, I don't think it's necessarily helpful one way or the other that those two words don't appear. The problem with that is this Court requires strict compliance. That's the Court's language. It requires strict compliance with Rule 32i3b, which says a disputed issue must be expressly, explicitly resolved at the sentencing. And this was a disputed issue. What about the phrase that was quoted by opposing counsel on page 1062? This is not a case of negligent vehicular homicide. It is willful, deliberate, thoughtful, and intentional act of a self-serving nature. Does that fall short of malice-aforethought? It's worse than falling short. It's not even consistent. Because in the same court, in the course of the same sentencing, he says that this was reckless. And I don't know how at the same time he says this is willful and intentional and it's reckless. It doesn't even make sense. He needed to at least have a coherent theory of how malice-aforethought existed. And merely making a bunch of damning statements, which went in all different directions, can't begin to satisfy that or show that there was clear and convincing evidence there. Sotomayor If he hadn't used the word reckless somewhere else, does that equate to malice-aforethought? If he hadn't used the word reckless? Yes. Just this part I read to you. Does that equate to malice-aforethought, even though those two words are not used? If he said willful, deliberate, intentional? He said willful, deliberate, thoughtful, and intentional act of a self-serving nature. No, because all that describes is presumably he means to say it was willful and intentional that he kept driving. That doesn't show that he willfully intentionally caused deaths. If he took a gun and pointed at them and shot, that would be a willful and intentional act, unless he had some mental argument that he wasn't noncomplismentous. But that wasn't in the case. There was absolutely no evidence that he willfully and intentionally killed people. So that wouldn't suffice to make that finding. The final point I want to make, the government makes much of the commend yourselves to God statement and admits that there could be many different interpretations. They say on this evidence it must be interpreted as get ready to die. Well, if the Border Patrol agents knew the same facts Mr. Panetta Duval knew that caused that accident and those deaths, and they did. The same statement, if it had been made by the Border Patrol, would have been interpreted as get ready to kill, because they were the ones who whipped out the spike strips that led to the swerve, which led to the deaths. That simply cannot be the same. The same two things can't be true, and the government is trying to have both sides of the coin, which does not make any sense logically or legally. If there are no further questions. Thank you, counsel. We appreciate the arguments that you've made today. The case is submitted, and we will stand adjourned for this session.
judges: Fletcher B. , Canby, Graber